UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| James P. Fantetti, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>Access Group, Inc., )<br>)<br>Defendant. )<br>) | Case No. 1:06-cv-793 |

ORDER

This matter is before the Court upon Defendant Access Group Inc.'s Motion to Dismiss Plaintiff James Fantetti's Complaint on the ground that it fails to state a claim upon which relief can be granted. Doc. no. 4. For the reasons stated below, the motion is **GRANTED.**

I. Background

Plaintiff brings this action on behalf of himself and all others similarly situated for breach of contract against Defendant. Plaintiff makes the following allegations in the amended complaint: Plaintiff is an individual and a resident of Hamilton County, Ohio. Defendant is a Delaware corporation engaged in the business of originating private and federal Stafford student loans throughout the nation, and particularly in Ohio.

At some time prior to August 3, 2001, Defendant entered into a binding agreement

with the Untied States Department of Education, whereby Defendant became an authorized originator and servicer of federal Stafford Loans pursuant to the Higher Education Act ("HEA"). On August 3, 2001, Plaintiff, who was a student at the University of Cincinnati College of Law at the time, signed a Master Promissory Note (Complaint, exh. A) and entered into a contract with Defendant, under which Defendant agreed to originate and service federal Stafford Loans to Plaintiff and Plaintiff agreed to repay those loans. The terms of the Note incorporate by reference a document entitled "Borrower's Rights and Responsibilities." (Complaint, exh. B). The Note states that interest rate information is presented in the "Borrower's Rights and Responsibilities."

With respect to the interest rate for all loans disbursed by Defendant to Plaintiff, the "Borrower's Rights and Responsibilities" states the following:

> For Stafford Loans first disbursed on or after July 1, 1998, the interest rate will be a variable rate, adjusted annually on July 1, not to exceed 8.25%. The interest rate formula and the actual interest rate applicable to each of my loans will be disclosed to me.

Beginning in August 2001 and continuing through January 2004, Defendant disbursed loans to Plaintiff and serviced them in conjunction with the Note. As the loans were disbursed each academic year, Defendant sent Plaintiff disclosure documents which stated Plaintiff's interest was a variable rate that could change each July 1. The disclosure documents did not include the interest rate formula applicable to the loans as required by the Note. On July 1, 2004, the variable interest rate on Plaintiff's loans was adjusted to 2.82%. On or about November 15, 2004, Defendant unlawfully raised the

interest rate on Plaintiff's student loans from 2.82% to 3.37%.

Plaintiff brings this action on behalf of himself and a class consisting of:

> All student loan borrowers who (1) obtained Federal Stafford student loans from [Access Group] at any time within fifteen years prior to the filing of this Complaint, (2) whose promissory notes state that Access Group will only adjust the variable rate on their Stafford loans once a year on July 1, and whose promissory notes and interest rate disclosure documents did not include the interest rate formula applicable to their loans, and (3) whose interest rates Access Group increased at any time other than on July 1.

Plaintiff presents causes of action for (1) breach of contract and (2) injunctive relief. First, Plaintiff claims that he and Defendant were parties to a loan contract/promissory note that required Defendant to adjust the variable interest rate on the loans only once a year on July 1 and to disclose the interest rate formula applicable to Plaintiff's loans; Defendant breached its contract with Plaintiff by unilaterally raising the interest rate on the loans on or about November 15, 2004, and failing to disclose the interest rate formula applicable to the loans; and Plaintiff has been damaged by the breach in that Defendant unjustifiably charged Plaintiff a higher interest rate on his loans for a period of time prohibited by the loan contract. Second, Plaintiff claims that Defendant should be enjoined from continuing to (1) fail to disclose to students in its disclosure documents the interest rate formula applicable to Stafford Loans, (2) state in its promissory notes and disclosure documents that it will adjust the rate on students' Stafford Loans only once a year on July 1, and (3) raise the interest rates of federal Stafford Loan student borrowers at times other than on July 1 of each year.

II. <u>Motion to dismiss</u>

Defendant moves to dismiss the complaint on three grounds.  First, Defendant contends that the complaint seeks to enforce the HEA, for which there is no private right of action.  Second, Defendant argues that the HEA preempts the complaint because by asking the Court to find illegal what federal law expressly provides, the suit would interfere with the Congressional objective of increasing student loan availability.  Third, Defendant asserts that the complaint does not state a claim for breach of contract.

In response, Plaintiff contends that he does not bring this suit as a private cause of action under the HEA.  Plaintiff alleges that the amended complaint mentions the HEA in the jurisdiction and venue section only because the Note states that it must be interpreted in accordance with the HEA.  Plaintiff avers that his claims are not preempted by the express preemption provision of the HEA, 20 U.S.C. § 1083, or any other provision of the HEA.  Plaintiff further argues that even if his claim for breach of contract were based in part on § 1083 or any other provision of the HEA, his claim is not preempted because he is pursuing a garden-variety state law contract claim, even though it may implicate the HEA and some of its regulations.  Plaintiff contends he has stated a claim for breach of contract by alleging that Defendant adjusted his interest rate on a date other than July 1 without disclosing the interest rate formula stated in the HEA.

### III. Standard of review

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, a court must construe the complaint in the light most favorable to the non-moving party. Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987). For purposes of the motion, the reviewing court must accept all well-pleaded facts as true. Id. (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). A court need not, however, accept as true legal conclusions or unwarranted factual inferences contained in the complaint. Id. (citations omitted). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

### IV. Analysis

A. Plaintiff's breach of contract claim based on the interest rate increase in November 2004 is preempted

Plaintiff claims that Defendant "breached its promise to only adjust his interest rate once a year without disclosing the interest rate formula stated in the HEA. More specifically, Fantetti's claim is that the terms of the contract did not permit Access Group to raise his rate in November 2004." See doc. no. 5, p. 13. Defendant argues that the HEA preempts Plaintiff's claim because the HEA expressly permits the action Defendant pinpoints as the basis for Plaintiff's complaint - i.e., charging a higher interest rate during the repayment period of the student loan than during the grace period. Defendant asserts

5

that to apply state breach of contract law under these circumstances and allow state law to punish conduct that the HEA permits would frustrate the purpose of the HEA to encourage lenders and guarantors to make funds readily available to large numbers of low income students. See Morgan v. Markerdowne Corp., 976 F. Supp. 301 (D. N.J. 1997).

Defendant further argues that the Court must dismiss the breach of contract claim because Defendant did not breach the Note by applying different interest rates during the grace and repayment periods for Plaintiff's loans. Rather, Defendant asserts that the Note expressly provides that Defendant can charge the interest rates that the HEA establishes, unless Defendant notifies Plaintiff in writing of a lower interest rate; Plaintiff alleges Defendant charged the interest rates the HEA allowed; and Plaintiff does not allege that he was notified in writing of a lower interest rate.

The Supremacy Clause of the United States Constitution, Article VI, Clause 2, provides that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." State law that conflicts with federal law is "without effect." Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992) (citing Maryland v. Louisiana, 451 U.S. 725, 746 (1981)). "Consideration of issues arising under the Supremacy Clause 'start[s] with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress.'" Id. (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)). Thus , Congressional purpose "is the ultimate touchstone" of preemption analysis. Id. (quoting Malone v. White Motor Corp.,

435 U.S. 497, 504 (1978) (quoting Retail Clerks v. Schermerhorn, 375 U.S. 96, 103 (1963)).

Congressional intent may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." Id. (citing Jones v. Rath Packing Co., 430 U.S. 519, 525 (1977)). If there is no express congressional command, "state law is preempted if it actually conflicts with federal law." Id. (citing Pacific Gas & Elec. Co. v. State Energy Resources Conservation and Development Comm'n,, 461 U.S. 190, 204 (1983)).

Insofar as Plaintiff claims that Defendant breached the contract by adjusting the interest rate in November of 2004, his claim involves an alleged conflict between state and federal law. The Note provides that the interest rates for Plaintiff's loans are those specified in the HEA, unless the lender notifies him in writing of a lower rate. The "Borrower's Rights and Responsibilities" simply states that the interest rate "will be a variable rate, adjusted annually on July 1 . . ." The rate is not disclosed in the loan documents of record, and there is no allegation that Defendant ever notified Plaintiff in writing of a lower rate. Accordingly, the HEA supplies the applicable rates.

Title 20 U.S.C. § 1077a(k) sets forth the formula for determining the rate. It provides:

>(1) In general
>
>Notwithstanding subsection (h) of this section and subject to paragraph (2) of this subsection, with respect to any loan made, insured, or guaranteed under this part (other than a loan made pursuant to section 1078-2 or 1078-3 of this title) for which the first disbursement is made on or after October 1, 1998, and before July 1, 2006, the applicable rate of interest shall, during any 12-month period beginning on July 1 and ending on June 30, be determined on the preceding June 1 and be equal to--
>
>**(A)** the bond equivalent rate of 91-day Treasury bills auctioned at the final auction held prior to such June 1; plus
>
>**(B)** 2.3 percent,
>
>except that such rate shall not exceed 8.25 percent.
>
>(2) In school and grace period rules
>
>Notwithstanding subsection (h) of this section, with respect to any loan under this part (other than a loan made pursuant to section 1078-2 or 1078-3 of this title) for which the first disbursement is made on or after October 1, 1998, and before July 1, 2006, the applicable rate of interest for interest which accrues--
>
>**(A)** prior to the beginning of the repayment period of the loan; or
>
>**(B)** during the period in which principal need not be paid (whether or not such principal is in fact paid) by reason of a provision described in section 1077(a)(2)(C) or 1078(b)(1)(M) of this title,
>
>shall be determined under paragraph (1) by substituting "1.7 percent" for "2.3 percent".

The regulations governing the HEA specify that a different interest rate applies during the repayment period, which according to the "Borrower's Rights and Responsibilities" begins the day after the 6-month grace period.[1] Title 34 C.F.R. § 682.202(a)(1) states as follows:

> (viii) For a Stafford loan for which the first disbursement is made on or after July 1, 1998, and prior to July 1, 2006, the interest rate is a variable rate, applicable to each July 1-June 30 period, that equals the lesser of--
>
> (A) The bond equivalent rate of the 91-day Treasury bills auctioned at the final auction prior to the June 1 immediately preceding the July 1-June 30 period plus 1.7 percent during the in-school, grace and deferment periods and 2.3 percent during repayment; or
>
> (B) 8.25 percent.

Thus, the HEA provides for a higher interest rate during the repayment period than during the grace period. The repayment period for a given individual can begin at various times during the year, depending on when the individual's grace period ends.[2] The HEA therefore permits a lender to adjust an individual's interest rate on a date other than July 1. By arguing that Defendant breached the parties' contract by increasing his interest rate in November 2004 instead of waiting until July 1, 2005, Plaintiff is claiming that

---

[1] The grace period begins the day after the borrower ceases to be enrolled at least half-time in an eligible school. See "Borrower's Rights and Responsibilities," ¶ 10.

[2] Plaintiff does not allege when his repayment period began, but the record indicates it began in November 2004. Plaintiff received loans for law school over the course of 2 1/2 years beginning August 2001 and ending January 2004, which indicates he would have finished law school in May 2004 and his grace period would have ended six months later in November 2004. The .55% increase in Plaintiff's interest rate in November 2004 would therefore coincide with the start of his repayment period.

Defendant violated state law by doing what the HEA expressly authorizes.

Plaintiff denies there is a conflict between the HEA statutory scheme and Defendant's allegedly contractually-imposed obligation to forego raising the interest rate on his loans until July 1, 2005.  Plaintiff contends that federal law permitted Defendant to wait until July 1, 2005, to raise the rate since the HEA and its governing regulations allow a lender to charge a lower interest rate than federal law specifies.  While apparently conceding that the interest rate formula contained in the HEA applies to his loans, Plaintiff argues that the rate increase for the repayment period allowed under the formula could be implemented only on July 1 under the terms of the contract with Defendant because the contract did not disclose the formula or any date other than July 1 for making a rate adjustment.

Plaintiff's argument is not well-taken.  The contract expressly incorporates federal law and specifies that the interest rates for Plaintiff's loans are those set forth in the HEA, unless the lender notifies Plaintiff in writing of a lower rate.  Plaintiff does not allege that Defendant ever notified him in writing that it was charging a lower rate of interest than the rates specified in the HEA.  Thus, under the terms of the contract, the interest rates on Plaintiff's loans are the HEA rates that apply during the grace period and the repayment period.  To prevail on his breach of contract claim premised on the increase in the interest rate at the start of his repayment period, however, the contract must be interpreted to prohibit application of the very rate that the HEA authorizes for this period of the loan.

Accordingly, the claim is necessarily preempted by the HEA.

B.  <u>Plaintiff's claim for failure to disclose is precluded by 20 U.S.C. § 1083</u>

Defendant contends that Plaintiff's claim for breach of contract based on a failure to disclose the interest rate formula for his loans is expressly preempted by the HEA, 20 U.S.C. § 1083, and that Plaintiff's loans are exempted from state disclosure laws under 20 U.S.C. § 1099.  Section 1099 provides that loans made pursuant to a program authorized pursuant to that subchapter shall not be subject to any disclosure requirements of any state law.  Section 1083(c) states that an eligible lender's failure to provide information required by that section shall not "provide a basis for a claim for civil damages."  Among the information that § 1083(a) requires to be disclosed "in simple and understandable terms" to the borrower, at or prior to both the time of loan disbursement and the start of the repayment period, is "the stated interest rate on the loan."  Plaintiff alleges that § 1083 does not bar his claim for failure to disclose because his claim is that Defendant failed to disclose the "interest rate formula" for his loan, not the "interest rate."

Accepting as true for purposes of the motion to dismiss Plaintiff's allegation that the disclosure documents did not include the interest rate formula applicable to his loans, Plaintiff may nonetheless not pursue a claim for damages based on the failure to disclose.  Plaintiff's attempt to distinguish between the interest rate formula and the interest rate itself for purposes of avoiding application of § 1083 is unavailing.  The interest rate for his loans is not a set rate but is based on a formula and cannot be ascertained without

11

knowing the formula. Thus, with respect to Plaintiff's loans, there is no real distinction between the interest rate and the interest rate formula. Plaintiff is precluded by § 1083 from bringing a claim for damages based on Defendant's failure to disclose the stated interest rate or the formula by which the rate is determined.

C. <u>The complaint fails to state a claim for relief</u>

Assuming Plaintiff is not barred from pursuing his claim for breach of contract based on Defendant's raising his interest rate in November 2004, this claim must nonetheless be dismissed for failure to state a claim upon which relief can be granted. Plaintiff does not deny that Defendant was authorized under the HEA to raise the interest rate on his loans during his repayment period. Plaintiff argues, however, that Defendant misled him to believe that his rate would be adjusted only once a year, on July 1, by disclosing this information in the loan documents and by failing to disclose the loan formula for the rate increase during the repayment period which the HEA authorizes. Plaintiff argues that because Defendant failed to disclose this essential term, the term is not part of the parties' contract.

Plaintiff's argument is not well-taken. As stated above, the contract expressly provides that the interest rates applicable to Plaintiff's loans are those specified in the HEA, unless Defendant notifies Plaintiff in writing of a lower rate, which Defendant is not alleged to have done. The HEA rates are thus part of the contract terms, irrespective of whether Defendant set out those specific rates in the loan disclosures. Accordingly,

Defendant did not violate the contract terms by increasing Plaintiff's interest rate in November 2004 as authorized under the HEA.

IV.  Conclusion

For these reasons, Defendant's motion to dismiss is **GRANTED.**  This case is **DISMISSED.**

    **IT IS SO ORDERED.**


Date: April 5, 2007                                S/ Sandra S. Beckwith
                                                                            Sandra S. Beckwith, Chief Judge
                                                                              United States District Court